# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

JIM CLARK; JAMES DIEM; DAVID          )
HOLLIS; STEVE LANE; TIM               )
MCANELLY; DON ROBERSON;               )
HARRISON THOMPSON; BOBBY              )
TORRE; THOMAS                         )
WOJCIECHOWSKI; and ROGER              )
HERRON, on behalf of                  )
Themselves and all other current and  )
Former employees similarly situated,   )
                                      )
      Plaintiffs,          )          03-CV-638-JHP-SAJ
                                      )
v.                                    )
                                      )
STOREY WRECKER SERVICE, INC.,         )
An Oklahoma Corporation,              )
                                      )
      Defendant.           )

## ORDER:

Now before the Court are the Cross Motions for Summary Judgment submitted by the Plaintiffs, Jim Clark, et al., and the Defendant, Storey Wrecker Service.  The Motions for Summary Judgment were submitted to the Court to consider the sole issue of whether the Motor Carrier Act and its exception to the Fair Labor Standards Act is applicable to this action.  For the reasons stated herein, the Court finds that the exemption applies to the defendant except for under limited circumstances, and therefore, Defendant's Motion for Summary Judgment is hereby GRANTED in part and DENIED in part and Plaintiffs' Motion for Summary Judgment is hereby GRANTED in part and DENIED in part.

1

**BACKGROUND:**

The Defendant, Storey Wrecker Service ("Storey"), is a company located in Tulsa, Oklahoma, that specializes in towing services for the public.  Storey is a towing company that has various types of trucks used to tow wrecked or disabled motor vehicles from the roadways and other areas in Oklahoma.  As a part of its regular business, the Defendant occasionally is required to transport wrecked or disabled vehicles across state lines.  The Plaintiffs in this action are all people who were employed as drivers by Storey at some point within the three years preceding the filing of this action.

During the Plaintiffs' employment with the Defendant, they were regularly scheduled to work in excess of forty hours per week.  Storey formerly paid all of their drivers on a commission basis; however, the compensation was changed to hourly at the request of several drivers.  The drivers' request was motivated by the desire to have a constant amount of income per week for budgeting purposes.  When the Plaintiffs were switched to hourly wages in lieu of commissions, Storey paid all of the employees a straight hourly wage for their compensation.  This amount was paid regardless of whether it was the first or fiftieth hour the employee had worked for the week.

Since the Plaintiffs worked in excess of forty hours per week, they claim that they are entitled to overtime wages.  To obtain past overtime wages and to force Storey to pay overtime compensation in the future, the Plaintiffs filed suit in this Court pursuant to the Fair Labor Standards Act ("FLSA").  After conducting a status and scheduling conference, the Court and the parties agreed that a preliminary round of motions was proper to determine the applicability of the FLSA.  The parties have filed cross motions for summary judgment on that issue and those

2

motions are now at issue.

## DISCUSSION:

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The court is to "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party" when it makes this determination. *Simms v. Okla.*, 165 F.3d 1321, 1326 (10th Cir. 1999). And, "if any part of the prima facie case lacks the sufficient evidence to require submission to the jury, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Under this analysis, the presence of a genuine issue of material fact defeats the motion. A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id. at* 249. Specifically, a fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Id.* at 248. An issue is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. *Id.* at 249.

The FLSA was enacted by Congress to eliminate the existence of "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers" in such a way as to ensure that employment and earning power was not curtailed. *See* 29 U.S.C. § 202. In order to achieve its declared purpose,

3

Congress enacted, among other guidelines, a standard dictating the maximum number of hours

per week employees may work. *See* 29 U.S.C. § 207. The FLSA states

> no employer shall employ any of his employees who in any work week is
> engaged in commerce or in the production of goods for commerce, or is
> employed in an enterprise engaged in commerce or in the production of
> goods for commerce, for a workweek longer than forty hours unless such
> employee receives compensation for his employment in excess of the
> hours specified at a rate not less than one and one-half times the regular
> rate at which he is employed.

29 U.S.C. § 207(a)(1). It is under this provision of the FLSA that the Plaintiffs brought this

cause of action seeking overtime compensation that the Defendant did not pay. In this case,

Storey qualifies as an employer because its employees are engaged in commerce. *See* 29 U.S.C.

§ 203. "Since appellants claim that they worked more than forty hours per week on many

occasions, they were clearly entitled to relief under the Fair Labor Standards Act . . . ."

*Bumgarner v. Joe Brown Co.*, 376 F.2d 749, 750 (10th Cir. 1967).

However, various exemptions from the FLSA's maximum hour requirements exist. *See*

29 U.S.C. § 213(b). Particularly important to the facts in this case is the exemption for "any

employee with respect to whom the Secretary of Transportation has power to establish

qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title

49." 29 U.S.C. § 213(b)(1). Section 31502 specifically provides the Secretary of Transportation

the jurisdiction to "prescribe requirements for . . . qualifications and maximum hours of service

of employees of, and safety of operations and equipment of, a motor carrier." 49 U.S.C. §

31502. This exemption to the FLSA is often referred to as the Motor Carrier Act ("MCA")

Exemption. Storey argues that because the Secretary of Transportation maintains control over

the company it is not subject to the FLSA maximum hour requirements. The Plaintiffs assert

that the exemption does not apply to Storey, thus, overtime compensation is mandatory for each hour worked in excess of forty per week.  In the alternative, the Plaintiffs argue that even if the exemption would apply, an exception to the exemption exists that removes the Department of Transportation control.

To be eligible for the exemption at issue in this case, it must preliminarily be shown that the Secretary of Transportation has jurisdiction over the Defendant.  Importantly, the jurisdictional component does not require the Secretary of Transportation to actually regulate the maximum hours of work for the workers; rather, all that is necessary for the exemption to apply is the existence of the power by the Secretary.  *See Southland Gasoline Co. v. Bayley*, 319 U.S. 44, 47-48 (1943); *Morris v. McCombs*, 332 U.S. 422, 434 (1947); 29 C.F.R. § 782.1.  The Motor Carrier Transportation Act provides the Secretary with jurisdiction "over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both, are transported by motor carrier—(1) between a place in—(A) a State and a place in another State . . . ."  49 U.S.C. § 13501.  So, under the law, it must be shown that Storey qualifies as a motor carrier and that it transports property and/or people from one state to another.  *Id.*  A motor carrier is defined as "a person providing motor vehicle transportation for compensation."  49 U.S.C. § 13102(12).  As a tow truck business, Storey is a motor carrier of property sufficient to satisfy the first requirement.  *See City of Columbus v. Ours Garage & Wrecker Service, Inc.*, 536 U.S. 424, 430 (2002).

Next, it must be shown that the Defendant engages in activities which affect interstate commerce.  The Code of Federal Regulations provides, "the Fair Labor Standards Act does not exempt an employee of a carrier from the act's overtime provisions unless it appears, among

5

other things, that his activities as a driver, driver's helper, loader, or mechanic directly affect the safety of operation of motor vehicles in transportation in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.7(a). There is no dispute from either party, nor is there anything in the record to suggest otherwise, that each of the Plaintiffs in this case qualifies as a driver under the language of the regulations. *See* 29 C.F.R. § 782.3(a).

Since the Plaintiffs all qualify as drivers, the remaining inquiry is whether the activities "directly [affect] the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce." 29 C.F.R. § 782.2(b)(2). Here, the activities undertaken by the Plaintiffs in their employment satisfy the inquiry. The Plaintiffs' work, consisting of the towing of vehicles disabled on the roads, involved in a wreck, or otherwise immovable, certainly qualifies as an activity affecting safety.

Moreover, the activities performed by the Plaintiffs satisfy the interstate commerce requirement. When determining whether the MCA exemption to the FLSA applies, the Regulations note that the interstate requirements between the FLSA and the MCA are distinct. 29 C.F.R. § 782.7(a). While the FLSA standard allows for jurisdiction over an employer that engages in commerce "where they operate or repair motor vehicles used in the maintenance, repair, or reconstruction of instrumentalities of interstate commerce," the MCA exemption is not properly applied simply due to that fact. *Id.* Instead, for the MCA exemption to apply to an employer, "[its] activities, so far as interstate commerce is concerned, must relate directly to the transportation of materials moving in interstate or foreign commerce." *Id.* Furthermore, if any of the transportation is such that it crosses state lines, it "clearly constitutes interstate commerce under both acts." 29 C.F.R. § 782.7(b)(1). However, the courts have found that even if the

6

transportation is completely intrastate in nature it may still satisfy the interstate requirement when "it forms a part of a 'practical continuity of movement' across state lines from the point of origin to the point of destination." *Foxworth v. Hiland Dairy Co.*, 997 F.2d 670, 672 (10th Cir. 1993) (quoting *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568 (1943)).

In this case, the Defendant conducts business whereby its drivers are required to cross state lines to tow vehicles. According to the undisputed facts, the Defendant performed 51 interstate trips in 2000, 66 interstate trips in 2001, and 36 interstate trips in 2002, for a total of 153 trips interstate in the three years preceding this lawsuit. *See* Brief in Support of Defendant's Motion for Summary Judgment at 4, ¶ 20. The Plaintiffs argue while the Defendant's number is accurate, a total of 56,676 intrastate trips were performed during the same period. *See* Plaintiffs' Response to Defendant's Motion for Summary Judgment at 4, ¶ 20. Thus, less than one half of one percent of the total trips were made across state lines during the three years at issue.[1] The Plaintiffs claim the amount of interstate towing is negligible and therefore does meet the requirement for the MCA exemption to apply. Their argument, however, misses the point. The Supreme Court has held, "it is the character of the activities rather than the proportion of either the employee's time or of his activities that determines the actual need for the Commission's power to establish reasonable requirements with respect to qualifications, maximum hours of service, safety of operation and equipment." *Morris*, 332 U.S. at 431-32.

---

[1] The Defendant disputes the use of that number of total trips by the Defendant for the relevant time periods. This case involves only Plaintiffs engaged in the towing of vehicles using the company's "small tow trucks" and does not take into account the "large tow trucks" that the Defendant also operates. Because the only relevant towing is that of the small trucks for this litigation, the use of the number indicating total trips for the fleet is improper. However, because the Court does not find that fact to be determinative it is not necessary to determine the accuracy of the calculations.

Here, the character of the activities undertaken by the Plaintiffs certainly effects the commerce on the highways in such a way that it has an interstate effect.  By clearing disabled or wrecked vehicles from the roadway, the Defendant's drivers engage in an activity that helps maintain and has a direct effect on the transportation across state lines.  *See* 29 C.F.R. § 782.7(a). Even without a finding of that direct connection, though, the mere fact that the Defendant conducted business which crossed state lines places it under the Secretary of Transportation's jurisdiction.  The regulations clearly state that when a carrier is engaged in transportation that crosses state lines and "whose duties directly affect the safety of operation of such vehicles, [it is] within the exemption."  29 C.F.R. § 782.7(b)(1).

Also compelling is the manner in which the Defendant holds itself out for interstate business through its administration of Department of Transportation tools such as mandatory testing for each of the employees and the licensing application for the company.  Specifically, each driver for the Defendant is given a federal Department of Transportation physical and is required to be drug tested by the Department.  *See* Response and Objection to Plaintiffs' Motion for Summary Judgment at Ex. A, ¶ 2.  In addition, the Defendant has obtained a Department of Transportation number that was acquired through an application process which must be renewed biennially.  *Id.*  The drivers were also required to complete a Department of Transportation log for the interstate trips made where a vehicle was towed outside of Oklahoma and beyond one hundred miles from Tulsa.  *Id.*  The drivers for the Defendant are each administered a Department of Transportation exam before employment.[2]  *Id.*  And, finally, each of the

---

[2]  The facts make no mention of whether the drivers are required to pass the Department's test before obtaining employment, but the Court will presume for the record that is in fact the case.

Defendant's trucks is required to keep a fire extinguisher and road flares on board and the trucks are required to have certain safety lights affixed. *Id.*

The Plaintiffs next argue that even if the exemption applies to the Defendant, it does not consequently apply to each of the Plaintiffs.  The Plaintiffs allege that since some of them did not make any interstate trips during their employment with the Defendant, the exemption should not apply with respect to each of them.  The Supreme Court has held that when interstate trips are "shared indiscriminately by the drivers and [are] mingled with the performance of other like driving services rendered by them otherwise that in interstate commerce" the exemption will apply. *Morris*, 332 U.S. at 433.  Therefore, even though some of the Plaintiffs did not make interstate trips for the Defendant, the exemption will apply to all of the employees if the trips were indiscriminately distributed by Storey.

The evidence in the record shows that the interstate trips were indiscriminately distributed among the drivers.  The Defendant has cited the testimony by deposition and affidavit of the General Manager of Storey and two people who served as Dispatchers of Storey during the dates at issue in this lawsuit. *See* Appendix to Brief in Support of Defendant's Motion for Summary Judgment, vol. 1, Ex. A-C.  Harold Baker, the general manager, stated there is no way to determine which driver will be assigned an interstate tow and that sometimes the dispatchers do not know which calls will be for interstate towing. *See id.* at Ex. A, 96.  Moreover, Mr. Baker said that to his knowledge there were no drivers who were exempt from making interstate tows. *See id.* at Ex. A, 96-97.  Likewise, Aaron Crayton, a former dispatcher with Storey, stated

> There was no way to predict which of the small truck drivers on duty on any given day would be assigned an interstate tow.  In assigning an interstate tow, if I knew it was interstate, I would look at who was available, what type of equipment was needed, who had been busy and

9

who had been idle, who was near the end of his or her shift, and any special circumstances.  It was not possible to know, at the beginning of a shift, which small truck Driver might be called to tow a vehicle across state lines.

*Id.* at Ex. B, ¶ 5.  Crayton also stated that none of the drivers were exempted from making interstate tows and, "[w]ith Storey's system of assigning work, there was no way to guarantee any small truck Driver that he or she would never have to make an interstate run, or on a particular day that he or she would be assigned an interstate run."  *Id.* at Ex. B, ¶ 3.  Terry McBeath, a dispatcher who has worked for Storey since 1992, also confirmed that the interstate tows are indiscriminately shared among the drivers.  *See id.* at Ex. C.  She stated that a number of factors are considered to determine to whom an interstate tow should be assigned.  *See id.* at Ex. C, ¶ 3.  The factors she considered were also used when deciding to whom intrastate tows would be assigned.  *See id.* at Ex. C, ¶ 4.  Lastly, Ms. McBeath stated, "When a tow is assigned to a driver, whether that tow is interstate or local, the Driver is not free to decline the job.  It is up to the Dispatcher to assign the jobs that come in, and the Driver does not have the right to tell the dispatcher that he or she chooses not to perform that job."  *Id.* Ex. C, ¶ 5.

The Plaintiffs argue that the interstate tows are not distributed on an indiscriminate basis. In support of this position, several of the Plaintiffs attached affidavits in which they state that the calls are not indiscriminately distributed.  For example, Harrison Thompson stated that some of the drivers received preferential treatment and some would decline to take interstate calls.  *See* Appendix to Plaintiffs' Brief in Response to Defendant's Motion for Summary Judgment, vol. 1, Ex. 7, ¶ 4.  The Plaintiff Tim McAnelly stated that he never performed any interstate tows because he notified three of the dispatchers that he did not want to perform those trips.  *See id.* at Ex. 8, ¶ 5.  Plaintiff David Hollis also made similar statements in his affidavit.  *See id.* at Ex. 6.

10

Standing alone, these statements might be enough to prevent summary judgment on this issue, as some of the Plaintiffs did not make interstate trips. However, because of other statements made in their affidavits, the Plaintiffs admit some of the interstate tows were distributed on an indiscriminate basis. The affidavits stated,

> I have also reviewed the Affidavits of Aaron Crayton and Terry McBeath, which were provided in support of Storey's Motion for Summary Judgment. After reviewing these affidavits, it is my understanding that Storey is asserting some towing calls were assigned without knowing whether it is an interstate or intrastate tow. This is true, but just as stated in Mr. Crayton's affidavit it occurred when a driver was performing an emergency tow of a car that was either accidentally wrecked or disabled on a roadway. In these circumstances, some of the time, the driver would learn where the automobile was to be towed upon arrival at the scene of the accident.

*Id.* at Ex. 7, ¶ 6. Because the Plaintiffs admit that there are interstate trips indiscriminately distributed among the drivers, the Storey drivers are all subject to the exemption even if some of them did not perform interstate tows. *See Morris*, 332 U.S. at 433.

The Plaintiffs' last contention is that even if the Defendant meets all of the requirements to fall under the MCA exemption, an exception to the exemption applies; thus, the Plaintiffs argue, the Defendant is required to pay overtime compensation to its workers. Specifically, the Plaintiffs cite to 49 U.S.C. § 13506(b)(3) which states

> **(b) Exempt unless otherwise necessary.**–Except to the extent the Secretary or Board, as applicable, finds it necessary to exercise jurisdiction to carry out the transportation policy of section 13101, neither the Secretary nor the Board has jurisdiction under this part over –
>
> **.   .   .**
>
> **(3)** the emergency towing of an accidentally wrecked or disabled motor vehicle.

11

The Plaintiffs allege that the very nature of the Defendant's business consists of emergency towing of vehicles.  In support of this position, the Plaintiffs rely on advertising, deposition testimony, affidavits of the Defendant and its officers whereby they describe the business as one which engages in "24 Hour Emergency Wrecker Service."  *See* Plaintiffs' Motion for Summary Judgment at 11-12, and corresponding exhibits.

It is undisputed that the Defendant engages in the towing of accidentally wrecked or disabled vehicles, so the question remaining is whether the towing they perform is "emergency towing" as required for the exemption.  49 U.S.C. § 13506(b)(3).  If the statutory language was not constrained by any definition, then the Plaintiffs' argument that the Defendant holding itself out as an emergency towing service would likely allow for the application of the exemption. However, the Code of Federal Regulations provides a very detailed definition of emergency with regard to the Motor Carrier Act:

> Emergency means any hurricane, tornado, storm (e.g. thunderstorm, snowstorm, icestorm, blizzard, sandstorm, etc.), high water, wind-driven water, tidal wave, tsunami, earthquake, volcanic eruption, mud slide, drought, forest fire, explosion, blackout, or other occurrence, natural or man-made, which interrupts the delivery of essential services (such as electricity, medical care, sewer, water, telecommunications, and telecommunication transmissions) or essential supplies (such as, food and fuel) or otherwise immediately threatens human life or public welfare, provided such hurricane, tornado, or other even results in:
>
> (1) A declaration of an emergency by the President of the United States, the Governor of the State, or their authorized representatives having authority to declare emergencies; by the FMCSA Field Administrator for the geographical area in which the occurrence happens; or by other Federal, State or local government officials having authority to declare emergencies, or
>
> (2) A request by a police officer for tow trucks to move wrecked or disabled motor vehicles

49 C.F.R. § 390.5.  The Defendant argues that this definition requires that there be some sort of disaster which results in a request by an official to tow vehicles.  Conversely, the Plaintiffs argue the law does not require a disaster but an emergency; in support of that position, the Plaintiffs cite the Federal Register explaining the Department of Transportation's decision to change the term from disaster to emergency.  *See* 57 Fed. Reg. 33638, 33643 (July 30, 1992).  Nonetheless, the Regulations require that there be an emergency interrupting the "delivery of essential services . . . or essential supplies . . . or otherwise threatens human life or public welfare."  49 C.F.R. § 390.5.

The Court finds that under limited circumstances the Defendant may respond to emergency situations as described by the Regulations.  Using the clear language of the Regulations, the Court envisions examples of this type of emergency to include the natural disasters as expressly noted in the Regulations and situations that are so serious that they impede or block the flow of traffic.  The Court finds that any wreck of disabled vehicle that results in the blocking or slowing of traffic on the roadways increases the risk of wrecks for other vehicles, thus potentially threatening the public welfare.  In addition, the impeding or blocking of traffic in those situations can certainly interrupt the delivery of services and supplies not only to the accident scene but to other locations.  Therefore, in those limited situations where an actual disaster as described in the Regulations has occurred or where a wreck or disabled vehicle is directly and significantly threatening life and welfare–for example if there is a multi-vehicle wreck on a major interstate roadway that is causing traffic to backup and a police officer requests the Defendant to move the vehicles–the emergency towing exception would apply and the Department of Transportation would not maintain control.

13

Plaintiffs argue that the simple existence of any wrecked or disabled vehicles on the roadway causes a threat to human life and public welfare.  The Plaintiffs cite the Department of Transportation's response to a comment during the rule making process whereby the Department noted,

> Wrecked or disabled vehicles often constitute such a threat.  Accidents sometimes block major highways completely, and even if traffic continues to move, the presence of damaged vehicles on or near the roadway creates obstacles and distractions which increase the risk of further accidents. Cars or trucks disabled by mechanical problems or lack of fuel may also be a threat since other drivers sometimes assume they are moving and attempt to follow them.  Public safety officials have the expertise to determine whether immediate action is necessary to correct situations like this.  Some of the emergencies in which a tow truck operator is summoned by law enforcement or emergency response officials will, in all likelihood, involve stranded motorists.  However, tow truck operators responding to routine road-service calls from private parties are not covered by the exemption.

57 Fed. Reg. 33638, 33643 (July 30, 1992).  The Department of Transportation's response, however, simply provides further support to the Court's finding.  The response describes wrecks or break downs where the flow of traffic is impeded or blocked as an emergency.  Moreover, in its comments, the Department also notes that routine road service calls are not covered by the exemption.  Thus, the Department of Transportation's response to comments fully supports the Court's finding.

Here, there is no evidence in the record to suggest if or how often the Defendant's drivers are engaged in towing that falls under the exemption.  Presumably, some amount of the Defendant's business involves the towing of vehicles in wrecks that result in the blocking or obstruction of roadways which result in officers requesting the vehicles to be removed; however, the amount or even the existence of that business is unknown to the Court.  The exemption, if

14

there are emergency situations that qualify, "shall not exceed the length of the motor carrier's or driver's direct assistance in providing emergency relief, or 24 hours from the time of the initial request for assistance" and once the time expires then the MCA exemption starts to operate again.  49 C.F.R. § 390.23.

Since there is no concurrent jurisdiction between the FLSA and the MCA, if the Defendant is exempt from the MCA then the FLSA necessarily applies unless there is some other exemption that applies.  *See Levinson v. Spector Motor Service*, 330 U.S. 649, 661-62 (1947). Therefore, when the activities of the Defendant's drivers fall under the exemption for the emergency towing of wrecked or disabled vehicles, the Defendant is subject to the requirements of the FLSA.

## CONCLUSION:

Therefore, the Court finds that the Motor Carrier Exemption Act applies to the Defendant's drivers except for when they are engaged in towing requested by police or other officials whereby the drivers are required to remove vehicles in emergency situations.  As such, the Defendant's Motion is hereby GRANTED in part and DENIED in part and the Plaintiffs' Motion is hereby GRANTED in part and DENIED in part.


IT IS SO ORDERED this 21st day of July 2005

James H. Payne
United States District Judge
Northern District of Oklahoma